**HODL LAW CALI, APC**
**Frederick A. Rispoli, Cal. Bar No. 321794**
**27762 Antonio Parkway**
**Suite L-1, No. 232**
**Ladera Ranch, CA 92694**
**Telephone: (213) 292-5200**
Filing@HodlLaw.org
*Attorney for Plaintiff Hodl Law, PLLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HODL LAW, PLLC<br><br>    *Plaintiff,*<br><br> vs.<br><br>SECURITIES AND EXCHANGE COMMISSION<br><br>    *Defendant.* | Case No.: 22-cv-1832<br><br>**PLAINTIFF HODL LAW'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SEC'S MOTION TO DISMISS**<br><br>Judge: Hon. M. James Lorenz<br>Hearing Date: March 13, 2023<br>Hearing Time: 10:30 am[1]<br>Courtroom: 5B |

---

[1] Undersigned counsel is available for oral argument should the Court exercise its discretion and order it under Local Civil Rules 7.1(d)(1) and 7.1(f).

Case No. 22-cv-1832-L-JLB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.     INTRODUCTION. ........................................................................................ 1

II.    STATEMENT OF FACTS. ......................................................................... 2

III.   APPLICABLE LEGAL STANDARDS. ................................................... 3

IV.    ARGUMENT ............................................................................................... 4

   A.  An Actual Controversy Exists That Is Ripe For Review And Confers Standing... 4

     1.  Hodl Law Has Standing and its Complaint Is Constitutionally Ripe. ............... 4

      a)  The SEC has a well-documented history of solely determining a DCU's security status through judicial review........................................................... 8

      b)  The SEC has consistently failed to disavow application of the Securities Act to the Ethereum Network and Ether DCU. ...................................................10

      c)  Enforcement against Hodl Law's secondary use of the Ethereum Network and Ether DCU violate its First and Fifth Amendment rights. ............................12

     2.  Hodl Law's Complaint Is also Prudentially Ripe. ...........................................13

      a)  The fitness of the issue for review necessitates judicial decision. ..................13

      b)  Hodl Law faces significant hardship without a judicial decision. ..................15

   B.  The APA Is Not An Impediment To The Court's Jurisdiction. ...........................16

     1.  The APA Is not Applicable Here As the Issues Raised Invokes the "Major Questions Doctrine." ........................................................................................16

     2.  Alternatively, the SEC's actions Permit Judicial Review under the APA.........18

   C.  The Court Should Exercise Its Discretion Under The Declaratory Judgment Act. 21

   D.  Hodl Law Seeks Leave To Amend Its Complaint Should The Court Determine Jurisdictional Issues Are Present. ........................................................................22

V.     RELIEF REQUESTED. .............................................................................22

1

## **TABLE OF AUTHORITIES**

2

## **Cases**

3

4

*Am. Fin. Benefits Ctr. v. FTC*, 2018 WL 3203391 (N.D. Cal. Mary 29, 2018)……..…17

5

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)……..……5

6

7

*City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998 (9th Cir. 2009)……………………………………………………………………..….5, 7

8

9

*Deaton, et al. v. SEC*, Case No. 1:21-cv-00001 (D. R.I. Mar. 5, 2021)………………..6

10

11

*Doe v. Aetna, Inc.*, 2016 WL 1028363 (S.D. Cal. Mar. 15, 2016)……………………..15

12

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978)…12

13

14

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998)………………………………...……..12

15

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)………………...……..4-5

16

17

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)…………………………...1

18

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)………………………………..13

19

20

*Full Circle of Living and Dying v. Sanchez*, 2020 WL 771420 (E.D. Cal. Dec. 29, 2020)……………………………………………………..15

21

22

*General Finance Corp. v. FTC*, 700 F.2d 366 (7th Cir.)………………….…...……..17

23

24

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989)…………………………………………………………………………3-4

25

26

*Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018)…………..……14n.15, 19

27

28

*Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. INS*, 306 F.3d 842 (9th Cir. 2002)………………………………………..5, 7

*In re Coleman*, 560 F.3d 1000 (9th Cir. 2009)……………………………………..5

*Independent Broker-Dealers' Trade Ass'n v. Securities and Exchange Commission*
    442 F.2d 132 (D.C. Cir. 1971)…………………….…………………………19

*Jones v. Securities and Exchange Commission*, 298 U.S. 1 (1936)……………….....2

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014)………………………….…………12, 13

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173 (5th Cir.
    1984)………………………………………………………………...……4

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000)…………………...………8, 10, 12, 13

*McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465 (5th Cir. 2014)……...……13

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir.
    2012)………………………………..……………………………13, 14

*Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006)…..19

*Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993)……………………………..5

*SEC v. Balina*, Case No. 1:22-cv-00950 (W.D. Tex. Sept. 19, 2022)…………………..9

*SEC v. LBRY, Inc.*, Case No. 1:21-cv-00260 (D. N.H. Mar. 29, 2021)……...………9, 18

*SEC v. Ripple Labs, Inc.*, Case No. 1:20-cv-10832 (S.D.N.Y. Dec. 22,
    2020)……………………….…………………………………6, 9-10, 18, 22

*SEC v. Ripple Labs, Inc.*, 2022 WL 748150 (S.D.N.Y. Mar. 3, 2022)…………...……10

*SEC v. Ripple Labs, Inc.*, 2022 WL 2705396 (S.D.N.Y. July 12, 2022)………………11

*SEC* v. *Wahi*, Case No. 2:22-cv-01009 (W.D. Wash. July 21,

2022)……………………………………..…9, 9n.10, 10, 10n.10, 22

*Skyline Wesleyan Church v. California Department of Manage Care*, 968 F.3d 738 (9th Cir. 2020)……………………………………………………..……15

*Standard Ins. Co. v. Saklad*, 127 F.3d 1179 (9th Cir. 1997)…………………………4

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009)………………..………7, 13, 15

*Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603 (5th Cir. 1983)………………………4

*West Virgina v. EPA*, 142 S. Ct. 2587 (2022)……………………………………16

*Williams v. Gorton*, 529 F.2d 668 (9th Cir. 1976)…………………………………3

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010)…………………………………8

## Statutes

5 U.S.C. § 701……………………………………………..……18

5 U.S.C. § 704……………………………………………………18

15 U.S.C. § 77d……………………………………………..……16

15 U.S.C. § 77t………………………………………...…………16-17, 18

15 U.S.C. § 78d-1…………………………………………………18

15 U.S.C. § 78u-4…………………………………………………18

15 U.S.C. § 78y…………………………………………………...18

## Rules

Fed. R. Civ. P. 12(b)(1)…………………………………………3

Fed. R. Civ. P. 12(b)(6)……………………………………...…2 n.3

**Additional Citations**

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2767................4

Gensler Comments On CNBC *Squawk Box* Regarding Recent SEC Lawsuit Over DCU
     Staking (Feb. 10, 2023),
     https://twitter.com/SquawkCNBC/status/1624034859432792066?s=20..........4n.4

Letter from Colorado U.S. Senator J. Hickenlooper to Chairman G. Gensler (10/13/22),
     https://www.hickenlooper.senate.gov/wp-content/uploads/2022/10/Sen.-
     Hickenlooper-Letter-to-Chair-Gensler-on-Digital-Asset-
     Regulation2.pdf….........................................................……...…5n.5

Zack Voell, "Market Wrap: Bitcoin Rangebound as XRP Plummets After SEC
     Lawsuit," *CoinDesk* (12/23/20),
     https://www.coindesk.com/markets/2020/12/23/market-wrap-bitcoin-
     rangebound-as-xrp-plummets-after-sec-lawsuit/………........................…….6n.6

"Litigation Tracker," (public, interactive tracking tool for SEC digital asset-related
     lawsuits), https://www.thecod3x.com/x/litigation-tracker….........................6n.7

Khardori, Ankush, "The Money Game: Can Gary Gensler Survive Crypto Winter?",
     *New York Intelligencer* (Feb. 23, 2023),
     https://nymag.com/intelligencer/2023/02/gary-gensler-on-meeting-with-sbf-and-
     his-crypto-crackdown.html…......................................…………...7n.8

*Yahoo!*, "CFTC says cryptocurrency ether is a commodity, and ether futures are next,"
     (Oct. 10, 2019), https://www.yahoo.com/now/cftc-says-cryptocurrency-ether-is-
     a-commodity-and-is-open-to-ether-derivatives-133455545.html…...............17n.16

Commissioner Peirce, Feb. 22, 2023,
     https://twitter.com/HesterPeirce/status/1628454043386368000?s=20...........19-20

Commissioner Peirce, "Statement on Safeguarding Advisory Client Assets Proposal,"
     (2/15/23) https://www.sec.gov/news/statement/peirce-statement-custody-
     021523……………………………………………………………...20

Commissioner Peirce, "Kraken Down: Statement on SEC v. Payward Ventures, Inc., et
     al.," (2/9/23), https://www.sec.gov/news/statement/peirce-statement-kraken-
     020923……...........................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Commissioner Uyeda, "Statement on Proposed Rule Regarding the Safeguarding of
        Advisory Client Assets," (2/15/23), https://www.sec.gov/news/statement/uyeda-
        statement-custody-021523 …...............................................................................20

Commissioners Roisman and Peirce, "Falling Further Back – Statement on Chair
        Gensler's Regulatory Agency," (12/13/21), https://www.sec.gov/news/statement/
        peirce-roisman-falling-further-back-121321…………………………………....20

Commissioner Peirce, "SECret Garden: Remarks at SEC Speaks," (4/8/19),
        https://www.sec.gov/news/speech/peirce-secret-garden-sec-speaks-
        040819#_ftnref2…......................................................................…21n.23

## I.     INTRODUCTION.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Laws fail to comport with due process when they "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited," or when they are so standardless that they authorize or encourage "seriously discriminatory enforcement." *Id.* (citation omitted). If Hodl Law's use of the Ethereum Network and Ether digital currency unit ("DCU") constitute unregistered securities transactions under the Federal Securities Act of 1933 (the "Securities Act")—it will stop. Hodl Law has asked Defendant Securities and Exchange Commission ("SEC") if it believes the Ethereum Network and Ether DCU are governed by the Securities Act (as have hundreds or thousands of others) but the SEC refuses to answer this basic question—for eight years.[2] At the same time, there are no federal laws that govern DCUs, no SEC regulations that govern DCUs, and no formal rules issued by the SEC addressing DCUs. The SEC has never engaged in formal rulemaking on any classification rubric for DCUs and has expressly disclaimed jurisdiction over the Ethereum Network and Ether DCU.

Against this backdrop, in its Memorandum Of Law In Support Of Defendant SEC's Motion To Dismiss ("Motion"), the SEC argues the Court should dismiss the Complaint for lack of standing, lack of ripeness, and that the Administrative Procedure Act ("APA") prevents judicial review. If the Court does not agree with its Rule 12(b)(1) defenses, the SEC requests the Court nevertheless exercise discretion and decline to review Hodl Law's request for declaratory and injunctive relief. Yet, Hodl Law can demonstrate it suffers imminent, irreparable harm from the SEC's regulation-by-lawsuit approach in an area over which it has no statutory authority. This action represents a

---

[2] To clarify an ambiguity in the Complaint [¶ 110] that the SEC relies upon to argue (at 7) that Hodl Law waited eight years to bring this action, Hodl Law has only existed since April 2022—the Ethereum Network and Ether DCU have existed since 2015. [*See* Complaint, ¶¶ 28-39 (describing network's history)]

controversy ripe for judicial review. Although the Court should find the APA is not applicable because there is demonstrably no statutory authority for the SEC to govern over the Ethereum Network and Ether DCU, given the agency's behavior and the Ninth Circuit's "flexible approach" to APA standing, the Court could choose to nevertheless permit Hodl law's claims to proceed under the APA.

The SEC has generated revenue from the fines in its lawsuits involving DCUs in excess of hundreds of millions of dollars. The SEC readily files its own declaratory judgment actions on its own terms across the nation, but seeks to dismiss an identical action that would operate in contravention of the SEC's purposefully ambiguous regulation-by-lawsuit strategy. But finding itself in the unfamiliar position of defendant is not grounds for the Court to deny declaratory relief on the identical grounds the SEC seeks in other forums. When presented with "officialdom unchained" the "courts have always been vigilant" to protect against abuse. *See Jones v. Securities and Exchange Commission*, 298 U.S. 1, 24, 32 (1936). As set forth below, the SEC's Motion should be denied.[3]

## II.     STATEMENT OF FACTS.

This case centers on the blockchain technology [Compl. ¶¶ 22-27] that underpins the second most valuable digital asset network behind bitcoin, the Ethereum Network and its native asset, the Ether DCU. [*Id.* at ¶¶ 28-41] Plaintiff Hodl Law is a law firm that provides legal services regarding digital assets (also known as DCUs and/or cryptocurrencies). [*Id.* at ¶¶ 1, 17] Hodl law transacts on the Ethereum Network and uses the Ether DCU. [*Id.* at ¶¶ 6, 17-18, 51-52, 102-104] Hodl Law played no role in the creation of the Ethereum Network or the Ether DCU. [*Id.* at ¶¶ 39, 55-57]

---

[3] The SEC has not sought to dismiss this request pursuant to Fed. R. Civ. P. 12(b)(6). Nor has it alleged the Complaint lacks subject matter jurisdiction due to lack of a federal question.

In 2018, the SEC publicly disclaimed jurisdiction over the Ethereum Network and Ether DCU and stated neither were subject to securities regulation. [*Id.* at ¶¶ 77-93] The SEC also permitted its employees to buy and sell the Ether DCU without restriction. [*Id.* at ¶¶ 21, 39] Presently, in public statements and to Hodl Law in particular, the SEC now refuses to state whether its final agency action regarding Ethereum in 2018 remains in force or whether it considers the network or DCU a security. [*Id.* ¶¶ 36-37, 105-106, 110] SEC admits as much in its Motion (at 10-11) by conceding it now considers any decision on security status to be pending.

In its Motion, the SEC cites no clear congressional authorization for its assertion of regulatory power over the comparatively nascent digital asset space. The SEC does not contest it has never engaged in the creation of regulations, rulemaking, or official notice-and-comment regarding the security status of any DCU. [*Id.* at ¶¶ 49, 65, 68, 70, 110] The only manner in which the public can ascertain whether the SEC believes a particular DCU is a security is when the agency files a federal lawsuit alleging such. [*Id.* at ¶¶ 4, 101, 111]

Consequently, Hodl Law seeks declaratory and injunctive relief enjoining the SEC from asserting its limited jurisdiction under the Securities Act regarding Hodl Law's use of the Ethereum Network and Ether DCU. [*Id.* at ¶ 16] By only contesting this Complaint on Fed. R. Civ. P. 12(b)(1) grounds, the SEC also concedes that, if the Court finds the existence of an actual case or controversy, Hodl Law's claims can be resolved, and relief provided, by judicial determination.

## III.   APPLICABLE LEGAL STANDARDS.

"Ordinarily a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader." *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976). "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might

brandish, while initiating suit at his leisure—or never." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (citation omitted).[4]

## IV.   ARGUMENT.

"An action for declaratory relief may be used to obtain a judgment that another party does not have a federal right." *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 607 (5th Cir. 1983). "What is litigated in such a situation is 'the precise issue which could have been litigated in federal court in a coercive action brought by' the declaratory defendant." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984), *quoting* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2767 at 740. It need only be shown that the declaratory relief defendant *could* bring such a claim, not that it necessarily will do so. *See Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) (in a "classic case" the court "can reposition the parties in a declaratory relief action by asking whether [the court] would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy").

### A.   An Actual Controversy Exists That Is Ripe For Review And Confers Standing.

#### 1.   Hodl Law Has Standing and its Complaint Is Constitutionally Ripe.

"'[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision.'" *Ellis v. Costco Wholesale Corp.*, 657

---

[4] SEC Chairman Gary Gensler has made many public statements warning market participants like Hodl Law to follow the lawsuits initiated by the SEC because participants' "runway is getting awfully short." *See, e.g.*, Gensler Comments On CNBC *Squawk Box* Regarding Recent SEC Lawsuit Over DCU Staking (Feb. 10, 2023), *available at* https://twitter.com/SquawkCNBC/status/1624034859432792066?s=20 (last accessed Feb. 27, 2023) (Chairman Gensler responding to interviewer's question: "You're talking about clarity . . . The question is if that's the [SEC's] choice [to keep crypto out of the mainstream financial system] why not just say it publicly?") (last accessed Feb. 25, 2023).

F.3d 970, 978 (9th Cir. 2011) (citation omitted). "'The constitutional ripeness of a declaratory judgment action depends on whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1004-05 (9th Cir. 2009), *quoting In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009). *See also California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093-94 (9th Cir. 2003) ("Whether we frame our jurisdictional inquiry as one of standing or ripeness, the analysis is the same"); *id.* at 1094 n.2 ("the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry").

When there is a substantial risk that injury will occur to the plaintiff due to the declaratory defendant's actions, a "controversy" sufficient to necessitate declaratory relief may be found in this circuit under the "firm prediction" rule:

> [I]f . . . 'the court can make a *firm prediction* that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule,' then by logical extension the controversy may be ripe although the plaintiff has not yet applied and been denied, and also does not fall within either of the two exceptions to the ripeness rule.

*Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 861 (9th Cir. 2002), *quoting Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 69 (1993) (O'Connor, concurring).

Hodl Law's cause of action expressly alleges—and the SEC does not contest (at 10-11)—that the SEC has zero regulations, zero rules and zero intent to engage in public rulemaking regarding which DCUs it considers securities.[5] The SEC fundamentally misunderstands (or misrepresents) the nature of this request for declaratory judgment:

---

[5] *See, e.g.*, Letter from Colorado U.S. Senator J. Hickenlooper to Chairman G. Gensler (10/13/22), *available at* https://www.hickenlooper.senate.gov/wp-content/uploads/2022/10/Sen.-Hickenlooper-Letter-to-Chair-Gensler-on-Digital-Asset-Regulation2.pdf (last accessed Feb. 27, 2023) ("Given the complexity of these issues, and recognizing that some digital assets are securities, others may be commodities . . . a formal regulatory process is needed now").

The SEC has no jurisdiction over the Ethereum Network and Ether DCU and cannot point to even one statute or regulation conferring such authority. Like everyone else, the SEC can only test its alleged jurisdiction that any DCU is a security in the courts—which the SEC has explicitly recognized before various federal courts. *See, e.g.*, *Deaton, et al. v. SEC*, Case No. 1:21-cv-00001 (D. R.I. Mar. 5, 2021), ECF No. 11 at 12 (conceding its enforcement lawsuits regarding whether DCUs are securities under federal law represent the "**exclusive method** for testing the validity of the [SEC's allegations a DCU is used as a security]") (emphasis added).

Once the SEC targets a particular DCU with its regulation-by-lawsuit approach, the value of that DCU plummets in value. This is not conjecture or hyperbole. In *SEC v. Ripple Labs, Inc.*, Case No. 1:20-cv-10832 (S.D.N.Y. Dec. 22, 2020) (herein referred to as "*Ripple Labs, Inc.*"), the value of the targeted DCU (XRP) vaporized by nearly 50% in less than twenty-four hours after the SEC filed its lawsuit.[6] This is just one of many concrete examples of injuries that are directly traceable to the challenged conduct given that the SEC has achieved similar results with the over *one hundred* cases it has filed to date.[7] That the value of Hodl Law's Ether DCU would likewise plummet is not hypothetical. In this sense, the Court can "firmly predict" the consequences of a regulation-by-lawsuit action against Hodl Law—or any defendant the SEC chooses to target that uses the Ethereum Network and Ether DCU.

The immediacy of the harm to Hodl Law is strengthened by additional factors. Broadly, the SEC recently self-proclaimed a decision to initiate a 'crypto crackdown' in

---

[6] *See, e.g.*, Zack Voell, "Market Wrap: Bitcoin Rangebound as XRP Plummets After SEC Lawsuit," *CoinDesk* (12/23/20), *available at* https://www.coindesk.com/markets/2020/12/23/market-wrap-bitcoin-rangebound-as-xrp-plummets-after-sec-lawsuit/ (last accessed Feb. 26, 2023).

[7] *See, e.g.*, "Litigation Tracker," (public, interactive tracking tool for SEC digital asset-related lawsuits), *available at* https://www.thecod3x.com/x/litigation-tracker (last accessed Feb. 25, 2023). *See also* Motion at 12, n.3 (referring to SEC website listing digital asset-related lawsuits).

which all DCUs (excluding bitcoin) are allegedly securities. Just four days before the filing of this response, the current SEC Chairman went on record describing the agency's digital asset enforcement framework for 2023: "Everything other than bitcoin" is a security.[8] And the pace of the SEC's lawsuits have dramatically increased over the past year. Also, given the SEC's nearly-half-decade-old statements that the Ethereum Network and Ether DCU were *not* securities subjection to regulation [Compl. ¶¶ 86, 91-93], its very response in its Motion (at 10-11) that it has withdrawn that position is cause for immediate alarm. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1124 (9th Cir. 2009) (ripeness met for declaratory judgment action where state department of health had yet to enforce rules against plaintiff but threat of job loss constituted "sufficient immediacy and reality"); *City of Colton*, 614 F.3d at 1005 (affirming determination that plaintiff's request for declaratory relief under CERCLA was ripe because "so long as there has been a release of hazardous materials substances, and the plaintiff spends money responding to it, a claim for declaratory relief is ripe for review").

In *Immigration Assistance Project*, the Ninth Circuit held that certain plaintiffs' claims were ripe under the firm prediction rule. *Immigration Assistance Project*, 306 F.3d at 862. There, the plaintiffs sought declaratory relief regarding a government agency's immigration practices. *Id.* The court held the first prong was met—the court could firmly predict that the plaintiff will apply for a benefit—because the plaintiffs "*did*, in fact, apply." *Id.* (emphasis in original). The second prong also was met—the court could firmly predict that the agency will deny the application by virtue of the challenged rule—because the plaintiff's request would almost assuredly be denied. *Id.* The analysis in the present case is easier, as the SEC asserts jurisdiction over which there is no statutory or

---

[8] *See* Khardori, Ankush, "The Money Game: Can Gary Gensler Survive Crypto Winter?", *New York Intelligencer* (Feb. 23, 2023), *available at* https://nymag.com/intelligencer/2023/02/gary-gensler-on-meeting-with-sbf-and-his-crypto-crackdown.html (last accessed Feb. 25, 2023). Prior to becoming Chairman, Mr. Gensler taught a digital asset course at the Massachusetts Institute of Technology where he stated he believed that the Ether DCU is a security. [Compl. ¶ 69]

regulatory basis (and no SEC rules) and Hodl Law has requested a determination that the Ethereum Network and Ether DCUs were not securities. [Comp. ¶¶ 105, 110]

Thus, although Hodl Law's standing and ripeness are easier to establish, in part, due to the SEC being unable to point to any authority providing it jurisdiction over DCUs, the progeny of cases discussing agency enforcement actions are instructive. "The Supreme Court and this court have often emphasized that, when plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (citation omitted) (reversing court's granting of motion to dismiss, holding plaintiff had standing to seek declaratory relief against state agency). When a plaintiff has not been prosecuted or fined and a defendant claims the action is unripe, the court considers "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citation omitted).

### a) The SEC has a well-documented history of solely determining a DCU's security status through judicial review.

"It is well settled that evidence of past instances of enforcement is important in a standing inquiry." *LSO, Ltd.*, 205 F.3 at 1155. That Hodl Law is under "substantial risk" and "realistic danger" of injury is impliedly conceded by the SEC (at 7) when it admits Hodl Law has shown a "concrete example" of the SEC's policy of regulation-by-lawsuit. But the referenced *Wahi* case is by no means the "only" example as the SEC implies. There are approximately *one hundred twenty-three* examples where the SEC has brought claims premised on unregistered securities transactions under the Securities Act.[9] Three

---

[9] *See* n.7, *supra*.

recent examples from this list demonstrate how the SEC *only* provides the agency's position through federal court cases involving the *same* circumstances here:

1. Non-Fraud—Alleging defendant company and individuals "orchestrated . . . unlawful sales and personally profited . . . from their unregistered sales of [the DCU known as] XRP" [*Ripple Labs, Inc.*, ECF No. 46, Am. Compl. ¶ 6; *see also id.* at ¶ 48 (conceding the DCU alleged to be a security is simply "software code . . . a digital asset and the native token of the [DCU's Network]")];

2. Non-Fraud—Alleging defendant company utilized a DCU called LBC that "were offered and sold as investment contracts and, therefore, securities" [*SEC v. LBRY, Inc.*, Case No. 1:21-cv-00260 (D. N.H. Mar. 29, 2021) (herein referred to as "*LBRY, Inc.*"), ECF No. 1, Compl. ¶ 2]; and

3. Fraud—Alleging defendants "traded in securities subject to the federal securities laws because these crypto assets were investment contracts." [*SEC* v. *Wahi*, Case No. 2:22-cv-01009 (W.D. Wash. July 21, 2022) (herein referred to as "*Wahi*"), ECF No. 1, Compl. ¶ 89]

In *Wahi*, the SEC alludes that the Ethereum Network itself is a security in describing how the DCUs in that case are "crypto asset securities" while noting most are "Ethereum-based" tokens.[10] In fact, the SEC alleges it has jurisdiction over every DCU that operates on the Ethereum Network. *See SEC v. Balina*, Case No. 1:22-cv-00950 (W.D. Tex. Sept. 19, 2022), ECF No. 1, Compl. ¶ 69 (alleging jurisdiction appropriate because DCU at issue, SPRK, was based on the Ethereum Network [*id.* at ¶ 39] and "ETH contributions were validated by a network of nodes on the Ethereum [Network], which are clustered more densely in the United States than in any other country")]

In similar litigation in the Southern District of New York, the SEC conceded that its *only* approach to digital asset regulation is to bring enforcement actions. *See Ripple Labs, Inc.*, ECF No. 205 at 4-6, (seeking to dismiss defendant DCU user's fair notice defense, SEC told court its prior "72 enforcement actions" provided that "both

---

[10] *See Wahi*, ECF No. 1, Complaint ¶ 95 (AMP), ¶ 112 (RLY), ¶ 121 (DDX), ¶ 135 (XYO), ¶ 145 (RGT), ¶ 169 (POWR), ¶ 182 (DFX), ¶ 197 (KROM).

[defendant] **and the public** were on notice that the SEC . . . had already filed a large number of actions involving digital assets") (emphasis added); *see also SEC v. Ripple Labs, Inc.*, 2022 WL 748150, at *3 n.3 (S.D.N.Y. Mar. 3, 2022) (denying SEC's motion to dismiss and permitting discovery on issue, holding "to the extent that the SEC requests that the Court parse each of these [72] filings to determine the underlying facts and legal basis for the enforcement actions and draw conclusions that they are similar to the [present] enforcement action . . . the Court declines to do so").

Ultimately, and using *Wahi* as an example, without ever warning the public, and allowing them to be sold and exchanged for years, the SEC filed an enforcement lawsuit against the defendant alleging multiple DCUs to be securities under the Securities Act. Nearly all the DCUs in *Wahi* are built upon the Ethereum Network and require the Ether DCU to function. Thus, the SEC is already engaged in multi-billion-dollar litigation against one individual for utilizing the very network (though utilizing different DCUs) at issue here.[11] Hodl Law is simply asking the Court to determine—identically as the SEC has asked courts to determine in over one hundred federal cases previously regarding other DCUs and networks—whether the Ether DCU and Ethereum Network fall within the Securities Act.

**b)    The SEC has consistently failed to disavow application of the Securities Act to the Ethereum Network and Ether DCU.**

"Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing." *LSO, Ltd.*, 205 F.3 at 1155. Not only has the SEC failed to disavow application of the Securities Act to the Ethereum Network despite hundreds (if not thousands) of requests [Compl. ¶¶ 98-100, 105-106], but its behavior on the issue has also been outright contradictory. First, in 2018,

---

[11] Interestingly, in *Wahi* the SEC discusses that the defendants "directly sold crypto asset securities . . . in return for consideration (most commonly Bitcoin, **Ether**, U.S. dollars, or other fiat currency, or processed through the use of smart contracts)" thereby implying the SEC may even *agree* with the relief sought by Hodl Law. *See Wahi*, ECF No. 1, Complaint ¶ 90 (emphasis added).

the SEC's Director of the Division of Corporate Finance gave a public, billion-dollar market-moving speech that the Ethereum Network and Ether DCU were *not* securities under the Securities Act. [*See* Compl. ¶¶ 75-85; *id.* at ¶ 86 ("based on my understanding of the present state of Ether, the Ethereum [N]etwork and its decentralized structure, **current offers and sales of Ether are not securities transactions**") (emphasis added); *id.* at ¶ 91 (affirming speech was official SEC position, stating "When **we** look at Ether . . . **we** don't see a third party promoter . . . So **we're** comfortable . . . viewing these as items that don't have to be regulated as securities") (emphasis added)] Prior to its publication, that speech was circulated amongst the highest officials at the SEC for approval. [*Id.* at ¶ 90][12]

At the same time, the SEC has since disavowed the speech and refuses to disavow application of the Securities Act to the Ethereum Network and Ether DCU.[13] Hodl Law already provided the Court video evidence of the former SEC Chairman purposefully

---

[12] Those high-level SEC officials included: (1) Special Counsel, Office of Small Business Policy; (2) Chief Counsel, Division of Corporate Finance; (3) Assistant Chief Counsel, Division of Trading and Markets; (4) Associate Director, Division of Corporate Finance; (5) Director, Division of Trading and Markets; (6) Chief Counsel, Division of Trading and Markets; (7) Deputy Director and Senior Policy Advisor, Division of Trading and Markets; (8) Fintech and Crypto Specialist, FinHub; (9) Chief of Staff; (10) Deputy Chief of Staff; (11) Senior Advisor to Clayton; (12) Director, Division Of Investment Management; (13) Co-Director, Division of Enforcement; (14) Co-Director, Division of Enforcement; (15) Senior Counsel, Division of Enforcement; (16) SEC General Counsel; (17) Assistant General Counsel; (18) Associate Director, Disclosure Review and Accounting Office; and (19) Deputy Chief Counsel, among others. [Compl. ¶ 90]

[13] The SEC's transactional litigation tactics regarding this speech resulted in one court reprimanding the SEC for its hypocrisy:

> The hypocrisy in arguing to the Court, on one hand, that the Speech is not relevant to the market's understanding of how or whether the SEC will regulate cryptocurrency, and on the other hand, that [the SEC Division Director] sought and obtained legal advice from SEC counsel in drafting his Speech, **suggests that the SEC is adopting its litigation position to further its desired goal, and not out of a faithful allegiance to the law**.

*SEC v. Ripple Labs, Inc.*, 2022 WL 2705396, at *3 (S.D.N.Y. July 12, 2022) (emphasis added); *see also* Compl. ¶ 95 (citing same).

evading answering with its position on Ethereum when directly asked. [*See, e.g.*, Compl. ¶ 67] Similarly, the SEC has refused to state it will disavow enforcing the Securities Act against Hodl Law should it continue its use of the Ethereum Network and Ether DCU [Compl. ¶¶ 105-106, 110] even though Hodl Law is just a user that had nothing to do with the network's creation. [*Id.* at ¶¶ 39, 55]

### c) Enforcement against Hodl Law's secondary use of the Ethereum Network and Ether DCU violate its First and Fifth Amendment rights.

"Finally, when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd.*, 205 F.3 at 1155. *See also Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (citation omitted) (holding plaintiff possessed standing for declaratory relief where state regulatory body's behavior constituted credible enforcement threat). One of Hodl Law's uses of the Ethereum Network and Ether DCU is engaging in constitutionally protected commercial speech in a digital metaverse on an Ethereum Network-based application. [*See* Compl. ¶¶ 17-18, 102-104] Moreover, when the SEC files a lawsuit alleging a particular DCU is a security, that is the first time the public is aware the agency viewed that particular DCU as a security and—unsurprisingly—the value of the network and DCU in the SEC's crosshairs plummets in value.[14] Consequently, Hodl Law's imminent harm stems from the SEC's taking of that value based on its history of seeking injunctive and disgorgement relief based on transactions involving DCUs. *See, e.g.*, *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521 (1998) ("the Declaratory Judgment Act 'allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained'") *quoting Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71 (1978).

For the reasons set forth in this section, there is no countervailing reason for the Court to find Hodl Law lacks standing in its declaratory action against the SEC, like the many courts that have found standing for plaintiff under much less egregious

---

[14] *See* Section IV.A.1., *supra*.

circumstances. *See, e.g.*, *Kiser*, 765 F.3d at 609 (allegations of future threat of enforcement by state dental board supported injury in fact element for Article III standing in request for declaratory relief)*; LSO, Ltd.*, 205 F.3d at 1156 (reversing district court, holding plaintiff had standing in declaratory action against state alcohol department due to "realistic threat" based on department's enforcement history and resultant suppression of its freedom of expression); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 470-71 (5th Cir. 2014) (plaintiffs had standing for declaratory relief against federal department's enforcement of federal law despite not having been formally denied laws' benefits because any attempt to apply for relief "would have been futile"); *Fordyce v. City of Seattle*, 55 F.3d 436, 440 (9th Cir. 1995) (plaintiff had standing to challenge statute that had yet to be applied to him and "concrete controversy" existed because plaintiff was "uncertain and insecure" regarding his rights and statute casted a "brooding presence" that adversely affected his legitimate interests as a citizen).

## 2.   Hodl Law's Complaint Is also Prudentially Ripe.

"Though a concrete case or controversy [may be] present, we also evaluate whether we should decline to exercise jurisdiction on the bases of two interrelated factors: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Stormans*, 586 F.3d at 1126 (citation omitted). Meeting only factor, however, is sufficient for a finding of prudential ripeness: "Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case." *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (citation omitted) (declining to evaluate hardship factor after finding fitness for review in light of history of past enforcement behavior of federal agency).

### a)   The fitness of the issue for review necessitates judicial decision.

"'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Stormans*, 586 F.3d at 1126 (finding plaintiffs' claims fit for decision because whether plaintiff's refusal to abide by rule regarding contraceptive dispensation was primarily legal and not

hypothetical). The SEC argues (at 8) that Hodl Law's claim is not ripe because it must wait for the agency to essentially get around to rulemaking before filing a suit. But Hodl Law cites the lack of any rulemaking process (that the SEC agrees it has never conducted over the near decade-long existence of the Ethereum Network) to demonstrate that, combined with its public disavowals of jurisdiction over the network [Compl. ¶¶ 86, 90-93], the SEC has no authority to engage in any regulation here.[15] Consequently, waiting for rulemaking or enforcement from the SEC is a pointless endeavor especially given that judicial determinations of an asset's security status has a near-century long track record (often involving private parties with no SEC involvement).

*Oklevueha* is particularly instructive. There, a chapter of the Native American Church sought declaratory relief that the federal government's seizure of marijuana it would use in future religious ceremonies was unlawful and the Controlled Substances Act ("CSA") could not be enforced against it. *Oklevueha*, 676 F.3d at 834. In reversing the district's court holding that the case was not fit for review, the Ninth Circuit held that prior enforcement actions presented a concrete example of likely future injury; that ripeness was not lost just because plaintiffs did not seek an exemption under the CSA; and that the government's claims about the alleged difficulty of crafting injunctive relief was not a factor in evaluating fitness for review because the scope of any injunctive relief could be determined at a later phase of litigation. *Id.* at 838.

Similarly, Hodl Law has already demonstrated that the SEC has engaged in over one hundred enforcement actions and has only increased the pace of lawsuits. Not only is an attempt at exemption from the Securities Act not required, Hodl Law has attempted to get clarity from the SEC only to be ignored. [Compl. ¶¶ 105-106] Again, it bears

---

[15] As set forth in Section IV.B.2., *infra*, the Court can consider the SEC's behavior with respect to digital assets generally, and the Ethereum Network and Ether DCU specifically, to constitute a "final agency action." *See, e.g., Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) ("We therefore focus on both the 'practical and legal effects of the agency action,' and define the finality requirement 'in a pragmatic and flexible manner'") (citation omitted).

repeating there is not only no exemption procedure for DCUs with the SEC, there is no mechanism *at all* for an entity to prospectively ascertain the SEC's subjective beliefs on a DCU before the agency files a lawsuit. *See Skyline Wesleyan Church v. California Department of Manage Care*, 968 F.3d 738, 753 (9th Cir. 2020) (reversing district court, finding fitness for review in part because state agency could not identify "any case in which a party that was already injured was required to navigate the type of ill-defined terrain [plaintiff] would have faced to ripen its claim in the way the [agency] argues"). Likewise, the SEC cannot even point to a single method available to Hodl Law to receive an answer to its questions regarding the agency's beliefs over its authority to regulate the Ethereum Network and Ether DCU.

### b) Hodl Law faces significant hardship without a judicial decision.

"'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Stormans*, F.3d at 1126 (citation omitted). In *Stormans*, the hardship factor was "certainly met, because unless [plaintiffs] prevail in this litigation, they will suffer the very injury they assert—they will be required to dispense [contraceptives] over their religious and moral objections." *Id. See also Full Circle of Living and Dying v. Sanchez*, 2020 WL 771420, at *4 (E.D. Cal. Dec. 29, 2020) (finding hardship satisfied where "[Plaintiff] would be forced to choose between continuing established operations as it has conducted them for several years and risking fines or withholding services"); *Doe v. Aetna, Inc.*, 2016 WL 1028363, at *3 (S.D. Cal. Mar. 15, 2016) (hardship prong met where insurer's planned policy change would affect plaintiffs' health and privacy concerns regarding prescriptions).

As stated previously, Hodl Law suffers the certainty that the value of its Ether DCUs will be wiped out if the SEC initiates *any* enforcement lawsuit alleging security status. Worse, the value of other DCUs that Hodl Law utilizes for transactions *over* the Ethereum Network would likewise be crushed. [Compl. ¶¶ 17-18, 102-104] And even worse than that are the non-financial implications. Hodl Law uses the Ether DCU to

purchase digital property in the metaverse to offer services, build its brand and strengthen its reputation as a digital asset-based firm. [*Id.*] The use of the Ethereum Network and its smart contract functionality is utilized in the firm's transactional practice of law. If the Ethereum Network and Ether DCU are subject to the Securities Act, Hodl Law could face disciplinary action by the state bar for violating federal law in connection with simply adhering to the rules of professional conduct regarding client payments and even custody of client property. The professional livelihood of any lawyer at the firm would be at stake. Given the financial pain, and especially the non-financial pain, the Court should find the hardship factor "certainly met" here.

### B.    The APA Is Not An Impediment To The Court's Jurisdiction.

#### 1.    The APA Is not Applicable Here as the Issues Raised Invoke the "Major Questions Doctrine."

The Supreme Court recently held a federal agency's claim of an "[e]xtraordinary grant[] of regulatory authority" requires "clear congressional authorization." *West Virginia v. EPA*, 142 S. Ct. 2587, 2614-16 (2022). As has been demonstrated by its prior enforcement actions and current behavior, the SEC claims jurisdiction over the trillion-dollar digital asset industry yet cannot point to single federal statue authorizing such a claim. [*See, e.g.*, Compl. ¶ 7 (market capitalization of Ethereum alone "is measured in the hundreds of billions of dollars")] "[A]n agency must point to clear congressional authorization when it seeks to regulate a significant portion of the American economy." *Id.* at 2621 (Gorsuch, J., concurring) (collecting cases). In *West Virginia*, the Supreme Court held the petitioner States had standing so long as the threat of injury from the EPA's claimed authority remained a possibility. *Id.* at 2607.

The APA governs the process by which federal agencies develop and issue regulations under those agencies' scope of authority. The SEC's scope of authority is limited to enforcement of the Securities Act. *See* 15 U.S.C. § 77d. The SEC can only bring court actions that "constitute or will constitute a violation of the provisions of [the Securities Act], **or of any rule or regulation prescribed under authority thereof**[.]"

16    Case No. 22-cv-1832-L-JLB

15 U.S.C. § 77t(b) (emphasis added). The SEC publicly *disclaimed* regulatory authority over the Ethereum Network and Ether DCU. [Compl. ¶¶ 91-93] Further, the SEC does not have any jurisdiction over commodities and the federal Commodities Futures Trading Commission ("CFTC") has stated on numerous occasions that the Ethereum Network and Ether DCU are commodities, not securities.[16] The SEC stated the Ethereum Network and Ether DCU are *not* securities [Compl. ¶¶ 66-70, 74, 77-86, 91-93] Critically, there is no law passed by Congress that confers regulatory and/or enforcement authority over digital assets with the SEC which means there is no agency action the SEC is required to (or even could) take. Its cited cases (at 10) are simply inapposite as they all deal with agency actions the agency is expressly endowed to regulate. *See General Finance Corp. v. FTC*, 700 F.2d 366, 368-69 (7th Cir.) (statutory language clearly delegated FTC to regulate plaintiffs' entities providing consumer loans); *Am. Fin. Benefits Ctr. v. FTC*, 2018 WL 3203391, at *1-*2 (N.D. Cal. May 29, 2018) (Congress enacted federal telemarketing act that explicitly delegated FTC enforcement authority against plaintiff telemarketers).

Ultimately, the SEC cannot cite to one statute or regulation that confers it with authority to regulate the Ethereum Network and Ether DCU; the SEC disavowed jurisdiction over the Ethereum Network and Ether DCU through its public

---

[16] On October 10, 2019, CFTC Chairman Heath Tarbert publicly announced the position of the CFTC on the Ether DCU:

> We've been very clear on bitcoin: bitcoin is a commodity under the Commodity Exchange Act. We haven't said anything about Ether—until now. **It is my view as Chairman of the CFTC that Ether is a commodity** and therefore it will be regulated under the CEA.

*Yahoo!*, "CFTC says cryptocurrency ether is a commodity, and ether futures are next," (Oct. 10, 2019), *available at* https://www.yahoo.com/now/cftc-says-cryptocurrency-ether-is-a-commodity-and-is-open-to-ether-derivatives-133455545.html (last accessed Feb. 26, 2023) (emphasis added). In this same interview, the interviewer relied on the SEC speech [*see* Compl. ¶¶ 77-94] declaring Ether DCU off limits to the SEC, as did the CFTC. *Id.*

pronouncements and eight years of taking zero enforcement action against either; and the CFTC has asserted its jurisdiction—uncontested by the SEC—over the Ethereum Network and Ether DCU. Under these circumstances, the APA simply cannot apply where the agency seeking its protection has no administrative role.

### 2. Alternatively, the SEC's actions Permit Judicial Review under the APA.

The SEC's assertion (at 10) that its "agency action" is not reviewable by statute is incorrect. One, two entities that transacted in other DCUs are in the midst of judicial review of the SEC's investigatory actions against them. *See, e.g.*, *Ripple Labs, Inc.* and *LBRY, Inc.* These are simply two of the SEC's roughly one hundred twenty-three regulation-by-lawsuit cases.[17] Two, the Securities Act provides numerous avenues for judicial review of its actions [*see, e.g.*, 15 U.S.C. § 77t (authorizing district court actions); 15 U.S.C. § 78y (permitting review of "final order" by US Court of Appeals); 15 U.S.C. § 78d-1 (discussing "appeal" of actions)] *and* permits a private right of action for "private securities litigation" in the context of class actions. 15 U.S.C. § 78u-4. Indeed, the SEC's argument ignores that there have been thousands of reported cases between parties seeking to establish in court whether a particular asset is a security. Three, the SEC misstates the burden of APA applicability: "This [APA] applies . . . **except** to the extent that- (1) statutes **preclude** judicial review." 5 U.S.C. § 701(a)(1) (emphasis added). The SEC has cited no statute that precludes judicial review of whether any digital asset is a security under the Securities Act.

The Court may also determine that the SEC has reached a "final agency action" sufficient for judicial review. As a preliminary matter, the SEC did not tell the Court (at 10) how there is any "other adequate remedy" for the relief sought under 5 U.S.C. § 704. Because there is none. Second, a "final" action is determined by the conduct of an agency. "We have observed that 'courts consider whether the practical effects of an

---

[17] See, n.7, *supra*.

agency's decision make it a final agency action, regardless of how it is labeled.' We therefore focus on both the 'practical and legal effects of an agency action,' and define the finality requirement 'in a pragmatic and flexible manner.'" *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1164 (9th Cir. 2018) (citations omitted). S*ee also id.* at 1162 (holding federal agency's "opinion" was a final agency action because it was "prepared" and affected the rights of the plaintiffs); *see also Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 983-84 (9th Cir. 2006) (holding federal agency's "annual operating instructions" was a final agency action because it consummated decision making process and established plaintiff's rights).

In the context of the SEC, appellate courts have held the SEC's mere "requests" can represent final agency action. *See Independent Broker-Dealers' Trade Ass'n v. Securities and Exchange Commission*, 442 F.2d 132, 139 (D.C. Cir. 1971) (reversing district court's dismissal for lack of jurisdiction, stating focus on "captions or labels" in this context "fail[s] to recognize, much less account for, the pressures which caused the [plaintiff]" to ultimately sue the SEC). The D.C. Circuit further held: "The fact that an agency has not issued a command does not mean that the step by which it initiated a procedure, or informal activity, leading up the exercise of its powers may be relegated to the area of mere unreviewable 'suggestion.'" *Id.*

Examining the context of the SEC's behavior here permits the Court to label its actions as "final." Again, the SEC has disclaimed authority over the Ethereum Network and Ether DCU. [Compl. ¶¶ 66-70, 74, 77-86, 91-93] Further, regarding digital assets, the SEC is a divided organization that readily (and frequently) publicizes that it provides no clear rules, regulations or even a process for any person or entity to ascertain whether they are on the right side of the SEC's whims with respect to DCUs. For example, Commissioner Hester Peirce publicly stated on several, separate occasions:

> (i) "Getting lots of questions re stablecoins & SEC: Facts & circumstances of course, but SEC should defer to Congress, which is actively considering the issue. In the meantime, we & other regulators could hold public

roundtables. Enforcement actions aren't the way to write the rules"[18]; (ii) "More generally, the sweeping 'just about every crypto asset is a security' statements also seem to be part of a broader strategy of wishing complete jurisdiction over crypto into existence"[19]; (iii) "Instead of taking the path of thinking through [crypto] staking programs and issuing guidance, we again chose to speak through an enforcement action . . . Using enforcement actions to tell people what the law is in an emerging industry is not an efficient or fair way of regulating."[20]

Commissioner Uyeda has also objected his colleagues' questionable manner in which it has consummated its action regarding DCUs:

> [The SEC's] approach to custody appears to mask a policy decision to block access to crypto as an asset class. It deviates from the Commission's long-standing position of neutrality on the merits of investments. Nevertheless, I prefer to have a discussion about crypto assets in the context of notice and comment rulemaking as opposed to enforcement actions. **For too long, the Commission's approach to crypto asset regulation has been to use enforcement actions to introduce novel legal and regulatory theories**.[21]

And former Commissioner Roisman—in a joint statement with Commissioner Peirce—bemoaned that:

> Rather than taking on the difficult task of formulating rules to allow investors and regulated entities to interact with digital assets, including digital asset securities, the Agenda—through its silence on crypto—signals that the market can expect continued questions around the application of our securities laws to this area of increasing investor interest. Such silence emboldens fraudsters and hinders conscientious participants who want to comply with the law.[22]

---

[18] Commissioner Peirce, Feb. 22, 2023, *available at* https://twitter.com/HesterPeirce/status/1628454043386368000?s=20. (last accessed Feb. 27, 2023).

[19] Commissioner Peirce, "Statement on Safeguarding Advisory Client Assets Proposal," (2/15/23), available at https://www.sec.gov/news/statement/peirce-statement-custody-021523 (last accessed Feb. 27, 2023).

[20] Commissioner Peirce, "Kraken Down: Statement on SEC v. Payward Ventures, Inc., et al.," (2/9/23), *available at* https://www.sec.gov/news/statement/peirce-statement-kraken-020923 (last accessed Feb. 27, 2023).

[21] Commissioner Uyeda, "Statement on Proposed Rule Regarding the Safeguarding of Advisory Client Assets," (2/15/23), available at https://www.sec.gov/news/statement/uyeda-statement-custody-021523 (last accessed Feb. 27, 2023).

[22] Commissioners Roisman and Peirce, "Falling Further Back – Statement on Chair Gensler's Regulatory Agency," (12/13/21), *available at*

Consequently, given the Ninth Circuit's directive that a "final" agency action must be determined from an evaluation of the "practical and legal effects" of agency behavior, it is difficult to arrive at any other conclusion than the current state of affairs with respect to digital assets is the "final agency action" of the SEC—especially considering the asset class's existence for over fourteen years. The SEC's seminal speech excluding the Ethereum Network and Ether DCU from the Securities Act was the consummation of a decision-making process with over two dozen high-ranking SEC officials, and the result of that public pronouncement enabled Hodl Law to reasonably rely on its rights and obligations and legal consequences of each. Therefore, Hodl Law may proceed under the APA.[23]

### C.   The Court Should Exercise Its Discretion Under The Declaratory Judgment Act.

The Court should not be persuaded by the SEC's arguments (at 12) that discretion warrants declining to hear this case. First, federal district court is the exclusive venue for which the SEC tests all its allegations regarding the security status of DCUs. Second, exactly as here, every SEC regulation-by-lawsuit case that seeks to declare a DCU a security (and always against a handful or less of defendants) does—in the SEC's own words (at 12)—"impact users of many types of digital currency and the larger digital

---

https://www.sec.gov/news/statement/peirce-roisman-falling-further-back-121321   (last accessed Feb. 26, 2023).

[23] Indeed, Commissioner Peirce stated the SEC has reached a dangerous point where it engages in purposeful obfuscation to market participants in order to backdoor immunity from judicial review:

> I have grown increasingly concerned that this necessary guidance—due to a lack of transparency and accountability—may have turned into a body of secret law. This secret law, as a practical matter, **binds market participants like law does but is immune from judicial—and even Commission— review**. We have our own secret garden—a tangle of staff pronouncements hidden beyond a wall **without a readily accessible entrance**.

*See* Commissioner Peirce, "SECret Garden: Remarks at SEC Speaks," (4/8/19), *available at*   https://www.sec.gov/news/speech/peirce-secret-garden-sec-speaks-040819#_ftnref2 (last accessed Feb. 26, 2023) (emphasis added).

currency market." In fact, the SEC's attempts to use its enforcement authority against one or two defendants to destroy the market value of any given DCU utilized by millions has reached such overreach that vast swaths of the digital asset industry have taken the rare step of filing multiple amici briefs at the district court level due to the SEC's regulation-by-lawsuit approach to agency action. *See, e.g.*, *Ripple Labs, Inc.*, ECF Nos. 649, 660, 661, 683, 684, 705, 706, 707, 708, 709, 710, 711, and 722 (court granting amici status to fourteen entities all *opposing* the SEC to various extents, including the largest US digital asset exchange and the largest digital asset trade groups); *Wahi*, ECF Nos. 39, 43, and 56 (amici opposing SEC's backdoor attempts to exceed its authority via regulation-by-lawsuit). Undeniably, Hodl Law is merely seeking to avail itself of the identical procedure used by the SEC for relief in which it has—literally—no other avenue.

**D.    Hodl Law Seeks Leave To Amend Its Complaint Should The Court Determine Jurisdictional Issues Are Present.**

Although the Court has ample reason to deny the SEC's Motion (and should), if the Court is inclined to grant the Motion, Hodl Law requests leave to amend its Complaint to satisfy any concerns of the Court, such as further specification of Hodl Law's transactional uses of the Ethereum Network and Ether DCU, the constitutional issues presented by such uses, and further specification of the injuries that represent imminent threat.

**V.    RELIEF REQUESTED.**

Accepting all of Hodl Law's pleaded facts as true and drawing all reasonable inferences in Hodl Law's favor, as the Court must do at this stage, the Court should deny the SEC's Motion.

//

//

//

//

//

Dated this 27th day of February, 2023.

By:   /s/ Frederick A. Rispoli
Frederick A. Rispoli
HODL LAW CALI, APC
27762 Antonio Parkway
Suite L-1, No. 232
Tel: 213-292-5200
Filing@HodlLaw.org
*Attorney for Plaintiff Hodl Law, PLLC*

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

HODL LAW CALI, APC
27762 Antonio Parkway
Suite L-1, No. 232
Tel: 213-292-5200

On February 27, 2023 I caused to be served the document entitled "**PLAINTIFF HODL LAW'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SEC'S MOTION TO DISMISS**" on all parties to this action addressed as stated on the attached service list:

- ▪ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list; and

- ▪ **E-FILING**: By causing the documents to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 27, 2023          By:    /s/ Frederick A. Rispoli_____
                                              Frederick A. Rispoli

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST

### *HODL LAW, PLLC V. SECURITIES AND EXCHANGE COMMISSION*
**United States District Court—Southern District of California**
**Case No. 22-cv-1832-L-JLB**

Alexandra Verdi
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F. St. NE
Washington, D.C. 20549
verdim@sec.gov

US Attorney's Office Southern District of California
Civil Division
880 Front Street
Suite 6253
San Diego, CA 92101
Efile.dkt.civ@usdoj.gov

Attorneys for Defendant Securities and Exchange Commission