Alexandra Verdi (NY Reg. No. 5480934)
verdim@sec.gov
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549-9613
Tel: 202-551-5057
Fax: 202-772-9263

Attorney for Defendant
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HODL LAW, PLLC,<br><br>  Plaintiff,<br><br>vs.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>  Defendant. | Case No.  22-cv-1832-L-JLB<br><br>**DEFENDANT SEC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Hon. M. James Lorenz<br>Hearing Date: March 13, 2023<br>Hearing Time: 10:30 am<br>Courtroom: 5B<br><br>No oral argument pursuant to Local Rule |

# I. INTRODUCTION

Defendant Securities and Exchange Commission ("SEC") hereby submits this reply in further support of its motion to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff Hodl Law, PLLC ("Hodl Law") misunderstands where the burden falls in this case, arguing repeatedly, and without supporting authority, that the SEC must establish its jurisdiction to regulate crypto/digital assets, including the Ethereum network and Ether. *See* Opposition, ECF 6 ("Opp."), at 3, 6, 8, 14, 17. It is undisputed, however, that the only relevant burden of proof on this motion is for Hodl Law to establish that this Court has jurisdiction over its Declaratory Judgment Act claim. Hodl Law fails to meets its burden and instead proffers a litany of speculative claims about hypothetical harms it may suffer because of the SEC's action (or purported inaction) concerning the Ethereum network or Ether. Because Hodl Law has not alleged any case or controversy, has failed to plead standing or ripeness, and cannot point to any authority that would provide it with a claim against the SEC, the Court should dismiss the Complaint.

# II. ARGUMENT

### A. There Is No Case or Controversy Between Hodl Law and the SEC

Nowhere in the Complaint or Opposition does Hodl Law identify a case or controversy between it and the SEC. As discussed in the SEC's opening brief, Hodl Law does not allege that the SEC has investigated or prosecuted it for any reason or that it is likely to do so in the future. *See* Memorandum of Law, ECF 5-1 ("Memo"), at 5. Hodl Law points to SEC actions against other unrelated parties without any indication that Hodl Law has participated in similar activities or is under investigation. *See* Opp. at 6-7; *see infra* at 3-4.

The Opposition also parrots the Complaint's grievances that "the SEC has zero regulations, zero rules and zero intent to engage in public rulemaking regarding which DCUs it considers securities." Opp. at 5. Hodl Law claims it disagrees with

what it has called the SEC's "regulation-by-lawsuit approach" and "fail[ure] to disavow application of the Securities Act to the Ethereum Network despite hundreds (if not thousands) of requests." Opp. at 6, 10. Hodl Law, however, fails to provide any authority that would impose obligations on the SEC to engage in any specific rulemaking, to pursue specific regulatory approaches, or to respond to private parties' requests for guidance. *See* Memo at 5.

In sum, Hodl Law's action reflects its frustration that the SEC has not done what Hodl Law wants it to do, namely give Hodl Law a green light to transact in Ether despite never identifying why the SEC is obligated to do so. Opp. at 12 ("SEC has refused to state it will disavow enforcing the Securities Act against Hodl Law should it continue its use of the Ethereum Network and Ether DCU"); 14 ("Hodl Law has attempted to get clarity from the SEC only to be ignored"). Hodl Law's dissatisfaction with the SEC does not rise to a case or controversy. *See, e.g.*, *Sukumar v. Int'l Olympic Comm.*, No. 21cv215-GPC(AGS), 2021 WL 2206476, at *3 (S.D. Cal. June 1, 2021) (no actual case or controversy where complaint "present[ed] no allegation of any 'real and reasonable apprehension' that Plaintiff will be subject to any type of liability by" defendant non-profit); *Westlands v. NRDC*, 276 F. Supp. 2d 1046, 1050, 1054 (E.D. Cal. 2003) (no "justiciable case or controversy under Article III" where plaintiff brought "lawsuit in the hopes of obtaining a declaration that its interpretation of federal law is correct" where contracts at issue not finalized and future litigation uncertain).

  **B.** **Hodl Law Fails to Plead Standing**

Hodl Law is unable to identify any actual or imminent injury sufficient to establish standing. *Coakley v. Sunn*, 895 F.2d 604, 606 (9th Cir. 1990) ("to pursue a claim under Article III, a plaintiff must allege personal injury that is fairly traceable to defendant's allegedly unlawful conduct and that the requested relief is likely to redress"). Hodl Law guesses that if the SEC were to file a suit against Hodl Law or another Ethereum network user (of which there are "literally millions"), the value of

the Ethereum network or Ether might drop. Opp. at 6, 12; Compl. at ¶ 6. Hodl Law has not alleged that the SEC has investigated, or is likely to investigate, Hodl Law, that the SEC has investigated or prosecuted another Ethereum network user for conduct similar to Hodl Law's conduct, or that Hodl Law has suffered, or is likely to suffer, any financial damage related to any SEC activity. *See* Opp. at 6.[1]

Hodl Law focuses on SEC enforcement actions against other parties relating to crypto/digital assets, but those actions involving parties unrelated to Hodl Law reveal nothing about the likelihood of injury to Hodl Law. *See* Opp. at 8-10. First, Hodl Law has not alleged that the SEC has communicated a specific warning to Hodl Law of investigation or prosecution for violations of federal securities laws or is likely to do so. Memo at 5-7. Second, Hodl Law shows no evidence that the SEC has prosecuted a similarly situated entity for violations of federal securities laws.

The only concrete example of any SEC civil enforcement action mentioned in the Complaint is the SEC's *Wahi* civil suit. Compl. at ¶ 4; *see also* Opp. at 8-10. *Wahi* involves allegations of fraud and insider trading "against a former Coinbase product manager, his brother, and his friend for perpetrating a scheme to trade ahead of multiple announcements regarding certain crypto assets that would be made

---

[1] The cases Hodl Law cites in support of its claim that it has sufficient "cause for immediate alarm" (Opp. at 7) are readily distinguishable from the situation here because they either involve evident direct impact on plaintiffs or harm was not at issue. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1123 (9th Cir. 2009) ("appellees can point to specific past instances [of their conduct] . . . which are direct violations of the challenged rules," one appellee was "forced to leave her job," and another appellee was "in danger of termination"); *Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 862 (9th Cir. 2002) (plaintiffs applied for adjustment of immigration status and court could "firmly predict that the [federal government agency] will eventually deny these applications by 'virtue of the [challenged rule]'"); *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1005 (9th Cir. 2010) (ripeness met where parties did not dispute environmental contamination or that plaintiff incurred costs in response; "[t]he only dispute [was] whether [plaintiff was] entitled to recover these costs, which goes to the merits, not justiciability").

1  available for trading on the Coinbase platform." *See SEC Charges Former Coinbase*
2  *Manager, Two Others in Crypto Asset Insider Trading Action*, U.S. SEC. & EXCH.
3  COMM'N (July 21, 2022), https://www.sec.gov/news/press-release/2022-127. In
4  *Wahi*, the SEC did not bring a claim for making unregistered offers or sales of
5  securities. *See id*. Hodl Law has not alleged any connection to any defendant in
6  *Wahi* and does not identify any realistic danger that it will be the subject of an SEC
7  action for fraud.
8        In its Opposition, Hodl Law raises two cases that were not described in its
9  Complaint that include allegations of unregistered offers or sales of securities (*see*
10  Opp. at 9), but those actions were brought against the issuers of the crypto/digital
11  assets and the issuers' officers, not against users of crypto/digital assets like Hodl
12  Law. *See SEC Charges Ripple and Two Executives with Conducting $1.3 Billion*
13  *Unregistered Securities Offering*, U.S. SEC. & EXCH. COMM'N (Dec. 22, 2020),
14  https://www.sec.gov/news/press-release/2020-338 (action filed against Ripple Labs
15  Inc. and two executives for allegedly raising over $1.3 billion through an
16  unregistered, ongoing digital asset securities offering); *SEC Charges New Hampshire*
17  *Issuer of Digital Asset Securities with Registration Violations*, U.S. SEC. & EXCH.
18  COMM'N (March 29, 2021), https://www.sec.gov/litigation/litreleases/2021/
19  lr25060.htm?utm_medium=email&utm_source=govdelivery (action filed against
20  blockchain company for conducting unregistered offering of digital asset securities).
21  Hodl Law, who is "just a[n Ethereum] user that had nothing to do with the network's
22  creation" (Opp. at 12; *see also* Compl. at ¶ 55), is not similarly situated to the
23  defendants in these SEC enforcement actions. Those enforcement actions do not
24  reveal any particular danger to Hodl Law.
25        Hodl Law differs significantly from plaintiffs in its cited cases (Opp. at 13)
26  because Hodl Law has not demonstrated that there is a realistic threat of enforcement
27  against it or that its Constitutional rights may be infringed. *Kiser v. Reitz*, 765 F.3d
28  601, 609 (6th Cir. 2014) (plaintiff's "intended conduct arguably violate[d] the [Ohio

State Dental] Board's regulations" and Board had "in the past threatened to enforce the regulations against" plaintiff via warning letters); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) (state agency had previously "enforced or threatened to enforce" statute "against licensees involved with [plaintiff's erotic art] conventions" and plaintiff pled "chilling [of] its freedom of expression"); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) (appellant "allege[d] a personal injury that [was] traceable to the Department [of Interior]'s conduct: his feathers were confiscated by the agent at the powwow" for violations of federal laws); *Fordyce v. City of Seattle*, 55 F.3d 436, 440 (9th Cir. 1995) (plaintiff arrested for alleged violation of state criminal statute and uncertainty of future prosecution for right "to videotape and audiotape private persons on public streets" amounted to concrete controversy).

Because Hodl Law "does not allege a substantial risk" that it has suffered or will suffer any injury, the Court "cannot characterize this dispute as a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014) (cleaned up).[2]

### C.     Hodl Law's Claim Is Not Ripe

Hodl Law fails to show that its claim is ripe for judicial decision.  First, Hodl Law ignores the requirement that, to be ripe for review, an agency action must be final.  Memo at 8-9.  Instead, Hodl Law relies on an inapposite case (Opp. at 14) in which "Plaintiffs' claims arise from an enforcement action that ha[d] already occurred" against plaintiffs.  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012).  Unlike in this case where there has been no investigation or prosecution of Hodl Law for violating federal securities laws, in

---

[2] Hodl Law superficially raises First and Fifth Amendment issues for the first time. Opp. at 12.  The Complaint includes no allegations of Constitutional violations.

*Oklevueha*, "the [Controlled Substances Act] ha[d] already been enforced against Plaintiffs" and plaintiffs had violated that federal law "countless times, and plan[ned] to continue to do so." *Id.* at 836, 837.

Hodl Law criticizes the SEC on numerous bases, including for, allegedly, not completing its decisionmaking process in connection with the Ethereum network and Ether, for not having authority to regulate crypto/digital assets, and for not giving Hodl Law "an answer to its questions regarding the agency's beliefs over its authority to regulate the Ethereum Network and Ether DCU." *See* Opp. at 14, 15. As stated previously, Hodl Law fails to identify any statute or other authority that obligates the SEC to resolve these issues vis-à-vis Hodl Law. Memo at 1, 5, 11.

Second, Hodl Law has not shown that it will suffer any "real cognizable hardship" due to "delayed [judicial] review." *NRDC v. Abraham*, 388 F.3d 701, 707 (9th Cir. 2004). Hodl Law complains that it "suffers the certainty that the value of its Ether DCUs will be wiped out if the SEC initiates *any* enforcement lawsuit alleging security status" and, "[w]orse, the value of other DCUs that Hodl Law utilizes for transactions *over* the Ethereum Network would likewise be crushed." Opp. at 15 (emphasis in original). Even more speculative are Hodl Law's unsupported claims that it will be harmed "in the metaverse," "build[ing] its brand and "strengthen[ing] its reputation," and in a hypothetical state bar disciplinary action. Opp. at 15-16.

Hodl Law's general concern that a case alleging offers and sales of Ether are offers or sales of securities could impact its financial holdings and reputation does not show Hodl Law's claim is ripe. "[H]ardship requires either that the underlying act will certainly occur and cause legal or economic damage to the plaintiff, or that the threat of the action is actually imminent and would cause irreparable harm unless stopped." *Bank of N.Y. Mellon v. City of Richmond*, No. C 13–03664 CRB, 2013 WL 5955699, at *5 (N.D. Cal. Nov. 6, 2013) (noting "hardship 'does not mean just anything that makes life harder'"). It is far from certain that the SEC will initiate an enforcement action involving the Ethereum Network or Ether, that Hodl Law will

continue to hold Ether at the time any potential enforcement action is brought, that a potential lawsuit would "wipe[] out" the value of any Ether Hodl Law may hold, or that Hodl Law would suffer "economic damage" or "irreparable harm" from these events. Hodl Law's cited cases (Opp. at 15) are readily distinguishable from the present case. *See Stormans*, 586 F.3d at 1121 (appellee store injured by state rules requiring it to stock Plan B despite religious objections and pharmacist appellees injured because one expected to be fired and other was forced to leave job because of religious convictions); *Full Circle of Living & Dying v. Sanchez*, No. 2:20-CV-01306 KJM KJN, 2020 WL 7714200, at *1, *4 (E.D. Cal. Dec. 28, 2020) (state agency issued plaintiffs formal notice of citation and threatened fines and prosecution for noncompliance with state law); *Doe v. Aetna, Inc.*, No. 14cv2986-LAB (DHB), 2016 WL 1028363, at *1 (S.D. Cal. Mar. 15, 2016) (under health insurance policy change, plaintiffs would have been forced "to obtain HIV and AIDS medications through the mail" which raised "health and privacy" concerns; it "would cost them thousands of dollars each month if they chose to get their medications at their community pharmacy instead of through the mail"). Should the Court not grant Hodl Law the relief it seeks at this time, it is purely speculative that Hodl Law would suffer any hardship.

### D. The Complaint Does Not Satisfy the APA

As discussed in the opening brief (Memo at 9-10), Hodl Law seeks a declaratory judgment without pointing to any authority that would provide it with a claim against the SEC. The only possible basis for Hodl Law's claim is the Administrative Procedure Act ("APA") (*see id.*), but Hodl Law states that "the APA simply cannot apply" in these circumstances and that "the Court should find the APA is not applicable." Opp. at 2, 18. Because Hodl Law identifies no legal basis for its claim, it must be dismissed. *See* Memo at 4, 9-10.

Hodl Law's alternative argument that it makes a claim under the APA is equally futile. Opp. at 18-21. First, Hodl Law claims that the SEC's statement that

Hodl Law has not identified "a statute that provides for judicial review of the SEC's purported action (or inaction)" (Memo at 10) is not correct (Opp. at 18). To support its claim, Hodl Law points to actions the SEC has brought to enforce the federal securities laws and to statutes that address court actions relating to the federal securities laws. *See* Opp. at 18. Hodl Law, however, does not identify any statute that provides for judicial review of Hodl Law's claims. The provisions Hodl Law cites (*id.*) are plainly inapplicable here. *See* 15 U.S.C. § 77t (SEC may, in its discretion, bring district court action for violation of Securities Act of 1933); 15 U.S.C. § 78y ("person aggrieved by a final order of the Commission" or "adversely affected by a rule of the Commission" may obtain review "in the United States Court of Appeals"); 15 U.S.C. § 78d–1 (covering SEC's authority to delegate its functions internally with "appeal" mentioned in passing); 15 U.S.C. § 78u–4 (concerning securities litigations between parties for violations of securities laws, not against SEC itself).

Second, there is no final agency action. Hodl Law argues that labels do not control the determination of what constitutes final agency action (Opp. at 18-19), but that argument does not help Hodl Law because Hodl Law does not point to anything, regardless of label, that "mark[s] the consummation of the agency's decisionmaking process" and determines "rights or obligations." *See* Memo at 10 (quoting *Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018 WL 3203391, at *7 (N.D. Cal. May 29, 2018)). Hodl Law's cited cases are inapposite (Opp. at 19), as, unlike in the cited cases, there are no allegations that the SEC has issued determinations, instructions, or requests about the Ethereum network or Ether. *See Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1162 (9th Cir. 2018) (final agency action consisted of report containing conclusion that party had particular legal rights); *Or. Nat. Desert Ass'n v. United States Forest Serv.*, 465 F.3d 977, 983 (9th Cir. 2006) (agency's "annual operating instructions" contained specific "parameters," constituted a license, and "impose[d] legal consequences on the permit holder"); *Indep. Broker-Dealers' Trade*

*Asso. v. SEC*, 442 F.2d 132, 136-39 (D.C. Cir. 1971) (SEC made written request to NYSE seeking changes to NYSE rules, and "the Commission's action was effective and final"). Hodl Law actually focuses on arguing the absence of "clear rules [and] regulations" but makes no claim based on agency inaction under 5 U.S.C. § 706(1). *See* Opp. at 19; Memo at 11. While Hodl Law also makes the inconsistent claim that a speech was "the consummation of a decision-making process" (Opp. at 21), Hodl Law does not and cannot show that the speech determined rights or obligations. Indeed, the Complaint states that the speech provided only "public guidance." Compl. at ¶¶ 92, 96, 99.

Without final SEC action, Hodl Law cannot make out a claim under the APA.

### E. Declaratory Relief Is Not Appropriate Here

Hodl Law provides no support for its argument that the Court should exercise its discretion here. Opp. at 21-22. Hodl Law is calling for agency action of broad application that is not appropriate in a declaratory judgment action. *See, e.g.*, *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1272 (S.D. Cal. 2007) (denying declaratory relief that "would have an impact far beyond the rights of the litigants before this Court"); *Stubbs v. Goldschmidt*, No. 04-6029-AA, 2004 WL 1490323, at *9 (D. Or. June 29, 2004) ("The court should not be called upon 'to decide abstract questions of wide public significance' when other government institutions may be more competent to address the question and judicial intervention may be unnecessary to protect the individual's rights."). Hodl Law seeks to compare this case to SEC enforcement actions (Opp. at 21-22), but those cases address specific facts that the SEC alleges violate the federal securities laws and are brought under provisions of the federal securities laws that authorize the SEC to bring enforcement actions. *See, e.g.*, 15 U.S.C. 77t(b), 78u(d). They are readily distinguishable from Hodl Law's general claims that are not tethered to any specific actions or transactions.

### F. The Court Should Not Permit Hodl Law to Amend Its Complaint

The Court should deny Hodl Law's request for leave to amend its Complaint (Opp. at 22), as any amendment would be futile. Even with "further specification of Hodl Law's transactional uses of the Ethereum Network and Ether DCU, the constitutional issues presented by such issues, and further specification of the injuries that represent imminent threat" (Opp. at 22), Hodl Law will be unable to satisfy its burden to show that this Court has subject matter jurisdiction over this action because Hodl Law is not challenging any final agency action. Any claim Hodl Law could bring would not be ripe, and Hodl Law does not have standing to address general issues about the application of the federal securities laws.

## III. CONCLUSION

For the foregoing reasons, and the reasons described in its opening motion papers, the SEC respectfully requests that the Court grant the SEC's motion to dismiss Plaintiff's complaint.

Dated: March 6, 2023

                                           /s/ Alexandra Verdi
                                           Alexandra Verdi
                                           Attorney for Defendant
                                           Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION
100 F. St. NE, Washington, D.C. 20549
Telephone No. (202) 551-5057; Facsimile No. (202) 772-9263

On March 6, 2023, I caused to be served the document entitled **DEFENDANT SEC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Buffalo, New York.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 6, 2023            /s/ *Alexandra Verdi*
                               Alexandra Verdi

***HODL LAW, PLLC v. SECURITIES AND EXCHANGE COMMISSION***
United States District Court—Southern District of California
Case No. 22-cv-1832-L-JLB

**<u>SERVICE LIST</u>**

Frederick A. Rispoli
HODL LAW CALI, APC
27762 Antonio Parkway
Suite L-1, No. 232
Ladera Ranch, CA 92694
Filing@HodlLaw.org

Attorney for Plaintiff Hodl Law, PLLC