**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HODL LAW, PLLC,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION<br><br>Defendants. | CASE NO. 22-cv-1832-L-JLB<br><br>**ORDER GRANTING DEFENDANT SECURITIES AND EXCHANGE COMMISSION'S MOTION TO DISMISS COMPLAINT [ECF NO. 5.]** |

Pending before the Court is Defendant Securities and Exchange Commission's Motion to Dismiss Plaintiff's Complaint. (Motion [ECF No. 5.]) Plaintiffs oppose. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Defendants' Motion.

//

I. FACTUAL BACKGROUND

Plaintiff is a law firm that purportedly focuses on legal and regulatory issues regarding digital assets, also known as digital currency units ("DCUs") and cryptocurrencies. Plaintiff engages in transactional activity on the Ethereum Network which requires use of the Ether DCU in order to conduct such transactions. Plaintiff seeks a declaratory ruling from the Court that engaging in transactional activities on the Ethereum Network using the Ether DCU does not implicate the Securities Act of 1933, 15 U.S.C. § 77a et seq.

II. PROCEDURAL BACKGROUND

On November 21, 2022, Plaintiff filed the Complaint in this action asserting jurisdiction under the Declaratory Relief Act, 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 28 U.S.C. § 1331, and the Securities Act, 15 U.S.C. §§ 77v and 78aa, and seeking declaratory relief. [ECF No. 1.]

On February 6, 2023, Defendant filed this Motion to Dismiss for lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. [ECF No. 5.]) On February 27, 2023, Plaintiff filed a Response in Opposition. (Oppo. [ECF No. 6.]) On March 6, 2023, Defendant filed a Reply. (Reply [ECF No. 7.]) On March 22, 2023, Plaintiff filed a Notice of Supplemental Authority. (Pl. Supp. Auth. [ECF No. 8.]) On March 30, 2023, Defendant filed a Response to the Notice of Supplemental Authority. (Resp. Supp. Auth [ECF No. 9.]) On June 23, 2023, Plaintiff filed a Second Notice of Supplemental Authority and Request to File Supplemental Briefing. (Second Supp. Auth. [ECF No. 10.]) On July 6, 2023, Defendant filed a Response to Plaintiff's Second Notice of Supplemental Authority. [ECF No. 11.]

III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal court

must satisfy itself of jurisdiction over the subject matter before proceeding to the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

The court must dismiss an action if subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3); *see also Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007). Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. When reviewing a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Where a 12 (b)(1) motion to dismiss is based on lack of standing, the Court must defer to the plaintiff's factual allegations and must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*. at 560. In short, a 12(b)(1) motion to dismiss for lack of standing can only succeed if the plaintiff has failed to make "general factual allegations of injury resulting from the defendant's conduct." *Id*. Because the SEC is challenging the factual basis of Plaintiff's standing, the Court may review

evidence beyond the complaint. *Courthouse News Service v. Planet,* 750 F.3d 776, 780 (9th Cir. 2014).

### IV. DISCUSSION

Defendant seeks dismissal of Plaintiff's claims arguing that this Court does not have jurisdiction over the claims because (1) there is no case or controversy between Hodl Law and the SEC, (2) Hodl Law has no standing, (3) Hodl Law has not pled a ripe dispute, and (4) the Administrative Procedure Act does not provide authority to bring this case. (Mot. at 4).

#### 1. STANDING

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. s 2201. "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981)(citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937). "Article III of the United States Constitution limits [a district court's] jurisdiction to actions involving actual 'cases' or 'controversies,' a limitation that manifests itself through the doctrine of standing." *Coakley v. Sunn*, 895 F.2d 604, 606 (9th Cir. 1990).

Standing requires that (1) plaintiff suffered an injury in fact; (2) plaintiff can show the defendant's causal connection to the injury; and (3) plaintiff can demonstrate that the injury would be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). The plaintiff must have suffered an "injury in fact" which is "an invasion of a legally protected interest"

that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id*. The Article III requirement that an injury is "actual or imminent" "ensure[s] that the alleged injury is not too speculative for Article III purposes---that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "[W]hen plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (citation omitted).

  Defendant asserts that Hodl Law is unable to identify any actual or imminent injury sufficient to establish standing, noting that Hodl Law has not alleged that the SEC has investigated, or is likely to investigate Hodl Law, that the SEC has not investigated or prosecuted another Ethereum network user for conduct similar to Hodl Law's conduct, and that Hodl Law has not suffered or is likely to suffer any financial damage related to any SEC activity. (Mot. at 6-7).

  In response, Hodl Law argues that it has standing under the "firm prediction" rule because there is a substantial risk that injury will occur to Plaintiff due to Defendant's actions. (Oppo. at 6). Plaintiff contends that the SEC has filed over one hundred cases where the value of the DCU has plummeted, and the value of Hodl Law's Ether DCU would likewise plummet if it is targeted by the SEC. (*Id*.) In this sense, the Court can "firmly predict" the consequences of a regulation-by-lawsuit action against Hodl Law—or any defendant the SEC chooses to target that uses the Ethereum Network and Ether DCU, therefore a "controversy" sufficient to necessitate declaratory relief exists. (*Id*).

  Hodl Law fails to identify a case or controversy between it and the SEC sufficient to demonstrate standing. In the Complaint, Plaintiff does not claim that

the SEC has investigated the Firm, or prosecuted it, but instead alleges that the SEC *might* bring suit against it for its activity on the Ethereum Network for violating securities laws. The possibility that the SEC may file suit against the Plaintiff is not definite and concrete, nor does it touch "the legal relations of parties having adverse legal interests." *Aetna*, 655 F.2d at 943.

Plaintiff claims that the SEC has pursued civil enforcement action against a defendant for trading in crypto assets, alluding that the Ethereum Network is a security in *SEC v. Wahi*, 2023 WL 3582398, *1, 22-cv-1009 (W.D. Wash. July 21, 2022), but the court in *Wahi* did not determine whether the crypto assets at issue were securities. Instead, *Wahi* indicates nothing more than what Plaintiff asserts, that the SEC is filing lawsuits against individuals trading in crypto currency under the Securities Act.   Although Hodl Law claims that the SEC has failed to announce rules regarding the classification of DCU's as securities despite Plaintiff's request for guidance to ensure compliance, Plaintiff does not identify any authority compelling Defendant to engage in specific rulemaking, pursue specific regulatory approaches, or respond to private parties' requests for guidance. Instead, Hodl Law's alleged dispute is more an "abstraction[ ]" than an "actual case" because the supposed injury has not materialized and may never materialize." *Montana Env.*, 766 F.3d at 1190. Accordingly, Plaintiff fails to allege an injury in fact or a realistic danger of suffering direct injury as a result of Defendant's conduct. *See LSO, Ltd.*, 205 F.3d at 1154.

2. RIPENESS

"The ripeness doctrine demands that litigants state a claim on which relief can be granted and that litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cit. 1990). "The basic rationale behind the ripeness doctrine 'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements,' when those 'disagreements' are premised on 'contingent future

events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580–81 (1985).

"Ripeness has two components: constitutional ripeness and prudential ripeness. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.2000) (en banc). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Id*. "The constitutional ripeness of a declaratory judgment action depends upon 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *United States v. Braren*, 338 F.3d 971, 975 (9th Cir.2003). "[B]ecause the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." *Thomas*, 220 F.3d at 1138. "A dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, presented in actual cases, not abstractions.'" *Montana Env.*, 766 F.3d at 1188 (citing *Colwell* v. *HHS*, 558 F.3d 1112, 1123 (9th Cir.2009).

Plaintiff's claim is not ripe under the constitutional ripeness doctrine. The crux of Hodl Law's complaint is that the SEC has not made a final decision with regard to whether the Ethereum Network and Ether DCU's are securities under the Securities Act, but this does not constitute a substantial controversy between Hodl Law and the SEC to warrant issuance of a declaratory judgment. There is no allegation that the SEC has investigated Hodl Law or brought suit against them for their conduct with regard to the Ethereum Network and the Ether DCU's. *See Braren*, 338 F.3d at 975. Nor is there any allegation of a controversy with any immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

With regard to prudential ripeness, a court must assess (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149

(1967)(distinguished on other grounds in *Calfano v. Sanders*, 430 U.S. 99 (1977). "Under the first prong, 'agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action.'" *Association of American Medical Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)(citing *Anchorage v. United States*, 980 F.2d 1320, 1323 (9th Cir.1992). "Courts traditionally take a pragmatic and flexible view of finality." *Id.* (quoting *Abbott Labs*, 387 U.S. at 149–50. "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Courts consider the "following elements: whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Ass'n. of Am. Med. Colleges*, 217 F.3d at 780.

      According to Defendant, Hodl Laws claim is not ripe because there is no final agency action, and Hodl Law has not shown that it will suffer any "real cognizable hardship" due to "delayed [judicial] review." (Mot. at 8: Reply at 5-6).

      Plaintiff contends the claim is prudentially ripe because 1) the SEC's behavior with respect to digital assets, and the Ethereum network and Ether DCU specifically, constitutes a "final agency action," and 2) it will suffer hardship if the Ethereum Network and Ether DCU are subject to the Securities Act because Hodl Law could face disciplinary action by the state bar. (*Id*. at 14-15). Hodl Law claims that the SEC is determining a DCU's status as a security through judicial review which puts them at a disadvantage.[1] (*Id*. at 8).

---

[1] Plaintiff further contends that enforcement against Hodl Law's secondary use of the Ethereum Network and Ether DCU violates its First and Fifth Amendment rights because it uses the Network and DCU in engaging in constitutional protected commercial speech in a digital metaverse, and that the SEC's practice of filing a lawsuit which drives down the value of DCU's constitutes a take of the value of

Plaintiff's claim is not ripe under the prudential ripeness doctrine. Whether the Ethereum Network and Ether DCU's are securities is a purely legal question not fit for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan*, 497 U.S. at 891. "The purpose of the 'fitness' test under *Abbott* is to delay consideration of the issue until the pertinent facts have been well-developed in cases where further factual development would aid the court's consideration." *Coleman*, 560 F.3d at 1009(citing *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) (further factual development would "significantly advance our ability to deal with the legal issues presented" so the matter determined not ripe for judicial review) (internal quotation marks omitted).

With regard to the second prong, finality, the SEC's actions do not constitute a final agency action sufficient to establish that the claim is ripe. "An 'agency action' includes any 'rule,' defined by the Act as 'an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy,' ss 2(c), 2(g), 5 U.S.C. ss 551(4), 551(13)." *Abbot Labs*, 387 U.S. at 149. "Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Lujan*, 497 U.S. at 891.

Plaintiff argues that the SEC's behavior in the context of DCU's constitutes final agency action arguing that "the SEC's seminal speech excluding the Ethereum Network and Either DCU from the Securities Act was the

---

the DCU. (Oppo. at 12). Plaintiff did not raise these arguments in the Complaint, therefore, the Court does not address them here.

consummation of a decision-making process with over two dozen high-ranking SEC officials, and the result of that public pronouncement enabled Hodl Law to reasonably rely on its rights and obligations and legal consequences of each." (Oppo. at 21). Plaintiff cites *In Independent Broker-Dealers' Trade Ass'n v. SEC,* 442 F.2d 132, 139 (D.C. Cir. 1971) claiming that appellate courts have held the SEC's mere requests can represent final agency action. (Oppo. at 19). While it is true that the determination of finality does not rest on the issuance of a command by an agency, the Court must take account of the practicalities of the agency action, determining whether the agency action is effective and final as to the aggrieved party. *Id*. at 140. Here, there is no final action that is effective and final as to Hodl Law regarding the status of the DCU's in question as illustrated by the fact that the SEC announced in a speech that Ethereum Network and Ether DCU's are excluded from the reach of the SEC as securities yet the SEC files numerous lawsuits asserting that DCU's are securities.

      Plaintiff filed two notices of supplemental authority arguing that the additional material supports the assertion that the SEC has made public statements that the Ethereum Network and Ether DCU's are not securities. [ECF Nos. 8, 10.] In the first notice of supplemental authority, Plaintiff claims that four new developments have occurred that directly address whether the SEC can determine the securities status of the Ethereum Network and Ether DCU's: (1) comments made during a Senate committee hearing involving the Chair of the Commodity Futures Trading Commission in which the Chair asserts that the CFTC has complete jurisdiction over the Ethereum Network and Ether DCU's; (2) a March 9, 2023 case filed by the New York Attorney General against a digital asset alleging the Ether DCU is a security under federal law; (3) an amicus brief in the *Wahi* case arguing that the SEC's approach of judicial determination of the security status of cryptocurrency violated due process and the SEC's obligations under the Administrative Procedure Act; and (4) a March 11, 2023

bankruptcy order where the SEC objected to confirmation of the debtor's plan because the SEC claimed that the DCU had aspects of a security. (Not. Supp. Auth. at 2-4 [ECF No. 8.])

In the second notice, Plaintiff cites to a May 16, 2023, district court decision to unseal portions of the Hinman Speech Documents which, according to Plaintiff, demonstrate that in 2018 the SEC authorized a speech that Ether and the Ethereum Network are not securities under the jurisdiction of the SEC which constitutes a "final agency action." (Not. Second Supp. Auth. at 2 [ECF No. 10.])

The documents are not binding authority, nor do they support Plaintiff's conclusion that the SEC has formally adopted the position that the Ether Network and Ether DCU's are not securities. Instead, the Court finds there is no "final agency action" by the SEC with regard to Ethereum DCU's because the SEC has not issued a definitive statement of its position that has a direct and immediate effect on Plaintiff and that requires immediate compliance. *See Ass'n. Am. Med. Colleges*, 217 F.3d at 780. No concrete action has applied to Plaintiff in a way that harms or threatens to harm the law firm by virtue of the SEC's failure to act, therefore it is not a final agency action. *Lujan*, 497 U.S. at 891. Although Plaintiff contends the Hinman Speech Documents show that the SEC deems the Ethereum Network and Ether DCU's to not be securities, they do not illustrate an evaluative process yielding a sufficient record "to enable judicial review." *See Western Watersheds Project v. Bernhardt*, 519 F.Supp. 3d 763, 782 (D.Idaho 2021). Instead, they are commentary that illustrate the ongoing confusion surrounding the status of cryptocurrencies as securities and demonstrate the need for the SEC to issue definitive guidance rather than approaching the issue in piecemeal litigation.

"The other element for consideration is hardship, but that does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Natural*

*Resources Defense Council v. Abraham,* 388 F.3d 701, 706 (9th Cir. 2004). The hardship must be "immediate, direct, and significant." *Colwell,* 558 F.3d at 1128. Here, Hodl Law argues that it "suffers the certainty that the value of its Ether DCU's will be wiped out if the SEC initiates any enforcement lawsuit alleging security status," and that it could face disciplinary action by the state bar because it uses the Ethereum Network in the firm's transactional practice. (Oppo. at 15). The hypothetical harm that Plaintiff might suffer if the SEC determines that the Ethereum Network and Ether DCU's are securities does not constitute an immediate and direct hardship because it is not concrete. This is so despite the SEC's recent uptick in lawsuits filed against DCU users. While Plaintiff argues that this history of prosecution elevates the risk of harm, there has been no specific warning by the SEC to Hodl Law or threat to initiate proceedings which has impacted the law practice in an immediate, direct and significant manner, therefore the claim is not ripe. *Colwell,* 558 F.3d at 1128.

Nor has Plaintiff sufficiently asserted a case or controversy under the "firm prediction rule." Under this rule, a controversy may be ripe "if it is 'inevitable' that the challenged rule will 'operat[e]' to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule—then there may be a justiciable controversy that the court may find prudent to resolve." *Reno v. Catholic Social Services*, 509 U.S. 43, 69 (1993)(O'Connor concurrence); *Montana Environmental Information Center v. Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014)(rule applies where event is inevitable and plaintiff's injury is nearly certain.)

As a primary matter, the "firm prediction rule" arose in the context of a benefit conferring regulation, and Plaintiff has not identified authority to allow its application in the present circumstances. Even if the rule applies here, Plaintiff has not sufficiently alleged that it is inevitable that the SEC will bring suit against

them. Although the SEC's failure to issue firm guidance on whether the Ethereum Network and Either DCU's are securities creates insecurity among the users, this uncertainty demonstrates why the controversy is uncertain at best. Because the Court cannot make a firm determination that the SEC will bring suit against Hodl Law, there is no controversy under the "firm prediction rule." *See Freedom to Travel v. Newcomb*, 82 F.3d 1431, 1435-36 (9th Cir. 1996).

Moreover, if the SEC issued a determination finding that the transactions involving Ethereum or Ether constituted a sale or offer of a security, it remains speculative that such a decision would harm Hodl Law. *Natural Res. Def. Council*, 388 F.3d at 706-07. For the foregoing reasons, the Court finds that the claim is not ripe.

3. ADMINISTRATIVE PROCEDURE ACT ("APA")

The APA allows for judicial review of two categories of agency conduct: (1) "agency action made reviewable by statute" and (2) "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

Defendant argues that the only possible basis for the claim is the APA, yet, Hodl Law themselves claim that the APA cannot apply in these circumstances. (Mot. at 10). Defendant further contends that Hodl Law's alternative argument that it *can* make a claim under the APA fails because Hodl Law has not identified any statute that provides for judicial review except to cite actions the SEC has brought to enforce the federal securities laws, which are plainly inapplicable here. (*Id.*) In addition, there is no final agency action that "marks the consummation of the agency's decision-making process" or determines "rights or obligations," instead citing a speech as the consummation of the process. (Reply at 9).

Plaintiff contends that the APA is inapplicable because the SEC can only bring court actions that constitute or will constitute a violation of the provisions of the Securities Act, and the APA is limited to governing the process by which federal agencies develop and issue regulations under those agencies' scope of

authority. (Oppo. at 16). In the alternative, Plaintiff argues that the SEC's actions can be reviewed under the APA because Defendant has cited no statute that precludes judicial review of whether any digital asset is a security under the Securities Act and their request for clarification constitutes a final agency action. (*Id*. at 18-19). Should the Court grant the SEC's motion, Plaintiff seeks leave to amend. (*Id*. at 22).

The Court finds that Plaintiff cannot bring the present claims pursuant to the APA. Plaintiff has not identified any statute that governs review of the SEC's action, or inaction, regarding the Ethereum Network or Ether DCU's. Although Plaintiff alternatively claims that the SEC's actions permit judicial review under the APA, the SEC's actions do not constitute "final agency action" because there is no "definitive statement of the agency's position," the SEC's actions do not have a "direct and immediate effect on the day-to-day operations" of Plaintiff, and no action by the SEC requires "immediate compliance with the terms." *Center for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023). Accordingly, the Court finds that Plaintiff has not alleged a claim under the APA.

As noted above, the Court finds no case or actual controversy in the present matter, therefore, declaratory judgment is not warranted. In light of the speculative nature of Plaintiff's claims, the Court concludes that no modified contention "consistent with the challenged pleading ... [will] cure the deficiency," therefore the motion to dismiss is granted without leave to amend. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (*quoting Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

//
//
//
//
//

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and the case is dismissed without leave to amend. [ECF No. 5.]

**IT IS SO ORDERED**

Dated: July 28, 2023

_____
Hon. M. James Lorenz
United States District Judge